```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X

AFFILIATED FM INSURANCE CO.,

                Plaintiff,
                                            14 Civ. 1403 (RWS)
      - against -
                                                 OPINION

M/V MAERSK VISBY, M/V MSC NATALIA, and
A.P. MOELLER - MAERSK A/S,

                Defendants.
-------------------------------------X

A P P E A R A N C E S:
```



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/25/16

```
        ATTORNEY FOR PLAINTIFF

        DUANNE MORRIS, LLP
        One Riverfront Plaza
        1037 Raymond Blvd., Suite 1800
        Newark, NJ 07102
        By:  James W. Carbin, Esq.
             Brian N. Biglin, Esq.


        ATTORNEYS FOR DEFENDANT
        A.P. MOELLER - MAERSK A/S

        FREEHILL, HOGAN & MAHAR, LLP
        80 Pine Street
        New York, NY
        By:  Don P. Murnane, Esq.
             Eric J. Matheson, Esq.
             Manuel A. Molina, Esq.
```

**Sweet, D.J.**

Defendant A.P. Moeller Maersk A/S ("Defendant" or "Maersk") has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 dismissing Plaintiff Affiliated FM Insurance Company's ("Plaintiff" or "Affiliated") complaint with prejudice. Plaintiff has cross-moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment to be entered in its favor. Based on the conclusions set forth below, Defendant's motion is granted and Plaintiff's motion is denied.

I.   **Prior Proceedings**

Plaintiff filed its complaint in the District of New Jersey on January 16, 2014, alleging admiralty and maritime claims related to the carriage and delivery of merchandise by water between the ports of Durban, South Africa, and Charleston, South Carolina in 2013. Compl. ¶¶ 1-10. Specifically, Plaintiff The Children's Place[1] ("Plaintiff" or "TCP") as shipper and consignee alleges Defendant M/V Maersk Visby ("Defendant" or "Maersk") failed to make proper delivery of two shipments, (i) in violation of Defendant's obligations as a common carrier of

---

[1] Affiliated FM Insurance Company brings this action as the subrogated cargo underwriter of The Children's Place.

merchandise by water and land for hire; (ii) negligently and maliciously and in breach of contract; and (iii) in breach of Defendant's duties as bailees of the cargo. Compl. ¶¶ 11-20. Plaintiff prays for $300,000 in damages for the goods lost. The following facts provide a summary of undisputed events for purposes of approaching the instant motion.[2]

Plaintiff arranged for transport of two containers from Durban, South Africa to Huntsville, Alabama. The first container, MSKU 0162223, was transported from the port of Durban to Lesotho for stuffing at a warehouse of TCP's seller and shipper on December 12, 2012. It was transported back to the port of Durban by land on December 14. The container was loaded on the MSC Natalia on December 18, 2012 and shipped by sea from Durban to the port of Charleston, South Carolina, where it arrived on January 26, 2013. Bulldog Hi-Way Express ("Bulldog") retrieved the container from the Charleston port on January 28 and transported it to the Charleston terminal of the Norfolk

---

[2] The facts that follow are drawn from filings in this case and are not in material dispute except as noted. Denials in the 56.1 statements that the evidence cited in support of a particular statement does not support that statement, in instances where the evidence uncontrovertibly does support that statement, are treated as admissions. Denials without support or explanation are treated as admissions. The inclusion of facts or statements in this Opinion that were challenged reflect a ruling that the challenge is overruled.

3

Southern Railway. The container arrived by rail in Huntsville, Alabama on January 31, 2013. The container was retrieved there by Bridge Terminal Transport ("BTT") and transported by truck to TCP's Fort Payne facility, where it arrived on February 1. Maersk alleges the security guard at the TCP facility issued a "clean" delivery receipt when the container arrived. Plaintiff alleges the guard took exception to the presence of a false seal. On February 4, TCP broke the seal and inventoried the container sometime thereafter. On April 9, 2013, TCP issued a charge back, later cancelled, due to shortfalls of cargo in the container. On May 17, 2013, TCP provided Maersk notice of its claim that the ultimate delivery was short.

The second container, SCMU 4027490, was loaded by two shippers and traveled an identical route. It left Lesotho on February 27, 2013, was gated into the port of Durban on February 28, and was loaded onto the Maersk Visby on March 5. It arrived in Charleston on April 6, was transported by Bulldog on April 8, and arrived in Huntsville on April 11. BTT retrieved the container and delivered it to TCP's Fort Payne location that same day. Again, Maersk alleges the TCP guard issued a "clean" delivery receipt, while TCP maintains that the guard took exception to the presence of a false seal. On April 23, 2012, TCP provided notice of a shortage claim to Maersk.

On Defendant's motion and absent Plaintiff's opposition, the matter was transferred to the Southern District of New York on March 3, 2014. Defendant filed its answer on March 7, 2014, and discovery and motion practice proceeded before the Honorable Thomas P. Griesa and Magistrate Judge Sarah Netburn. Defendant filed the instant motion for summary judgment on August 3, 2015, and Plaintiff cross-moved on September 21, 2015. The action was reassigned to this Court on January 15, 2016. Oral argument for the instant motions was held and the matter deemed fully submitted on February 4, 2016.

**II.  Applicable Standard**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. A court

is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original).

"[T]he substantive law will identify which facts are material." Anderson, 477 U.S. at 248. This action is governed by the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701. To establish a prima facie case under COGSA, "plaintiff has the burden, which remains with it throughout the case, of proving that the goods were damaged while in the carrier's custody." Caemint Food, Inc. v. Brasileiro, 647 F.2d 347, 351 (2d Cir. 1981) (quoting Pan-American Hide Co. v. Nippon Yusen (Kabushiki), Kaisha, 13 F.2d 871 (S.D.N.Y. 1921) (L. Hand, J.)). Plaintiff meets that burden by a demonstration of "(1) delivery of the goods to the carrier in good condition and (2) outturn by the carrier in damaged condition. Westway Coffee Corp. v. M. V. Netuno, 675 F.2d 30, 32 (2d Cir. 1982) (citations omitted). A prima facie case having been established, the burden falls to

the carrier to demonstrate a statutory exception to its liability applies. Id.

### III. Plaintiff Has Failed to Meet its Burden Under COGSA

Plaintiff sets forth the same argument with respect to both containers: Maersk took possession of each container filled and sealed, and delivered each container bearing different seals and less the total original contents, thus demonstrating the cartons went missing while the containers were in Maersk's custody.

Plaintiff's case relies primarily on discrepancies relating to the seals on the containers in question. Pl.'s Mem. of Law in Supp. Pl.'s Cross-Mot. for Summary Judgment at 6 ("Pl.'s MSJ"). Plaintiff alleges MSKU 0162223 contained 1350 cartons and was sealed with a Maersk-issued container seal numbered ML-ZA2114658. PL.'s MSJ at 7. Plaintiff further alleges that it received MSKU 0162223 with a different, numberless seal, and ultimately found the container to be missing 497 cartons. Container MSKU 0162223 was covered by Bill of Lading No. MAEU865648278. The Maersk-issued Bill of Lading, in relevant part, indicates the following: "1 Container Said to Contain 1075

CARTONS," "Weight 13904.100 KGS," "ML-ZA2114660." Pl.'s 56.1, Ex. 1.

Plaintiff alleges container SCMU 4027490 was sealed by the shipper with a Maersk-issued container seal numbered ML-ZA2120795. Pl.'s MSJ at 6. When SCMU 4027490 was received, Plaintiff alleges it bore an entirely different seal, EMPZA 3697621, and was missing 611 boxes. Id. Container SCMU 4027490 was covered by two bills of lading: MAEU86551104 and MAEU559496437. Bill of Lading MAEU86551104 indicates: "1 Container Said to Contain 576 CARTONS," "6380.040 KGS," "SCMU4027490 ML-ZA2120795." Pl.'s 56.1, Ex. 9. Bill of Lading MAEU559496437 indicates: "SCMU4027490 ML-ZA2120795 40 DRY 8'6 644 CARTONS 8129,600 KGS." Id.

A bill of lading provides prima facie evidence of receipt of the goods described therein. 46 U.S.C.A. § 30703(c). However, Defendant argues that Bally, Inc. v. M.V. Zim America establishes that "for purposes of this particular action involving sealed containers, a clean bill of lading is insufficient, as a matter of law, to establish a prima facie case of delivery of the cargo to the carrier in good order where the contents of a shipment are not visible." Def.'s Mot. for Summary Judgmet at 11 ("Def.'s MSJ").

8

In Bally, the Second Circuit overturned the district court's finding of a prima facie case under COGSA. The court affirmed the district court's holding that observation of the cartons at loading and a correlation between the number of cartons allegedly loaded into the container with the weight of the cargo on the manufacturer's invoices and packing list was sufficient to meet COGSA's first prong. Id. at 69. Nevertheless, the Court overturned the holding that Plaintiff had shown inadequate goods at outturn based on delivery by the carrier of a container with an intact (and original) seal. Id. at 69-70. In short, the Court found that the intact seals provided evidence that the goods did not go missing in the carrier's custody, and where there existed a possibility that the goods went missing between delivery at the port and the point of inventory, plaintiff had failed to meet the second prong of COGSA. Id.

The false seals notwithstanding, Plaintiff has failed to establish loss at outturn consistent with Bally and COGSA. Plaintiff alleges that it "has shown that [the containers] arrived at its facility with a shortage" at 11 (SCMU 4027490) 12 (MSKU 0162223). However, outturn occurs upon delivery by the carrier. J. Gerber & Co. v. S.S. Sabine Howaldt, 437 F.2d 580,

9

584 (2d Cir. 1971) ("delivered at the ports of destination"); accord Bally, 22 F.3d at 69.

In this case, the containers arrived at the port of Charleston, were retrieved and transported by Bulldog to the Charleston rail terminal where they traveled to Huntsville, picked up there by BTT, and only thereafter arrived at the TCP facility. It is undisputed that Bulldog and the railway company were Maersk's agent. See Pl.'s Resp. to Def.'s 56.1, ¶¶ 23-4. However, while Plaintiff submits that "BTT is owned by Maersk," Plaintiff concedes that BTT transported the containers on behalf of TCP. Id. ¶ 29, 69. It is undisputed that TCP did not weigh the container or open the containers and inspect the cargo at Huntsville. Id. ¶ 31, 70.

The necessity of establishing loss at outturn, as reasoned in Bally, is clear: it diminishes or eliminates the possibility that loss occurred when the goods were not yet or no longer in the carrier's custody. Had false seals in direct contradiction of the seals on the Bills of Lading been present and exceptional at outturn, Plaintiff needed to note and object at the point the goods were transferred from Maersk's custody to TCP's. Even assuming Plaintiff's factual allegations with respect to the false seal as true and that this condition existed at the moment

10

custody was transferred in Huntsville, this fact alone does not demonstrate loss at outturn sufficient to meet Plaintiff's burden under COGSA. See Caemint Food, 647 F.2d at 351. Regardless of the presence of true or "false" seals, Plaintiff has failed to establish loss of cargo at outturn, i.e., loss at Huntsville.

**IV. Conclusion**

Based on the conclusions set forth above, Plaintiff has failed to establish a prima facie case under COGSA. Defendant's motion for summary judgment is therefore granted and Plaintiff's cross-motion is denied.

It is so ordered.

**New York, NY**
**April 25, 2016**

ROBERT W. SWEET
U.S.D.J.